**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| KIMBERLY A. WALKER, ) | |
| ) | CASE NO. 5:12-cv-00670 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Kimberly A. Walker ("Walker") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Walker's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

### I. Procedural History

On February 20, 2008, Walker filed an application for POD, DIB, and SSI alleging a

disability onset date of July 15, 2007. Her application was denied both initially and upon reconsideration. Walker timely requested an administrative hearing.

On September 20, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Walker, represented by counsel, and an impartial vocational expert ("VE") testified. On October 6, 2010, the ALJ found Walker was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age forty-eight (48) at the time of her administrative hearing, Walker is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). (Tr. 20.) Walker has a high school education and past relevant work as a production supervisor and bookkeeper. (Tr. 20.)

### *Hearing Testimony*

At the hearing the ALJ posed the following hypothetical to the VE:

> Please assume you are dealing with an individual who is the same age as the claimant, with the same educational background and past work experience. Further assume an individual who retains the [RFC] for sedentary work with the following additional limitations: She would need a sit/stand option at-will and she would be incapable of more than occasional bending.

(Tr. 52.) The VE testified that such an individual could perform Walker's past relevant work. *Id*. The ALJ posed a second hypothetical to the VE utilizing the first hypothetical with the following restrictions:

> Let me add to that, to sedentary RFC with a sit/stand option no more than occasional bending that this individual would be limited to simple, routine,

> repetitive tasks. She cannot deal with changes in a routine work setting or more than occasional interaction with the public or co-workers.

(Tr. 53.) The VE testified that such an individual could *not* perform any of Walker's past relevant work, as none of it was simple and routine. *Id*. However, the VE opined that such an individual could perform some sedentary, unskilled jobs such as a general office clerk, order clerk, and unskilled assembler. (Tr. 53-54.) In response to a third hypothetical wherein the individual could not engage in sustained activity for a full eight-hour work day on a regular and consistent basis, the VE testified that no jobs would be available. (Tr. 43.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Walker was insured on her alleged disability onset date, July 15, 2007, and remained insured through the date of the ALJ's decision. (Tr. 10.) Therefore, in order to be entitled to POD and DIB, Walker must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

## IV. Summary of Commissioner's Decision

The ALJ found Walker established medically determinable, severe impairments, due to "fibromyalgia, degenerative disc disease of the lumbar spine, degenerative joint disease of the knees (remote history of multiple surgeries) and a depressive disorder." (Tr. 12.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 13.) Walker was found incapable of performing her past work activities, but was determined to have a Residual Functional Capacity ("RFC") for the full range of sedentary work with some additional restrictions. (Tr. 14, 20.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Walker was not disabled. (Tr. 20-21.)

**V. Standard of Review**

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied.

Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI.  Analysis

*Treating Physician*

Walker argues that the ALJ violated the treating physician rule by failing to give "good reasons" for the weight he ascribed to several opinions from his treating physician, Rex Dinsmore, D.O.  (ECF No. 15 at 12-16.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)).  "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)  Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all

6

of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2] Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

On March 19, 2008, Dr. Dinsmore diagnosed Walker with lumbar degenerative disc disease, gastroesophageal reflux disease ("GERD"), and chronic anxiety. (Tr. 388.) In pertinent part, Walker's symptoms included chronic lumbar spine and left leg pain and weakness. *Id*. Dr. Dinsmore noted that her pain was treated with epidural injections only and that there were no plans for surgery. *Id*. He opined that Walker had an "[e]xtreme limitation of ability to stand, walk, bend, lift, or handle objects weighing more than 10 lbs." (Tr. 389.)

On June 30, 2009, Dr. Dinsmore opined that Walker could stand/walk continuously for thirty minutes; that Walker needed to sit for thirty minutes before standing/walking again; and, that she could stand/walk for a cumulative total of four hours in an eight-hour work day. (Tr. 542.) Dr. Dinsmore indicated that Walker could sit for one hour at a time before requiring a rest,

---

[2] Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

as alternating postures was not medically indicated, for a total of six hours in an eight-hour work day. (Tr. 542-43.) His opinions were based on Walker's spinal pain. *Id*. (Tr. 542-43.) Dr. Dinsmore further opined that Walker could frequently balance and lift 1 to 5 pounds, occasionally stoop and lift 6 to 20 pounds, and rarely/never lift 21-50 pounds. (Tr. 544.) Finally, Dr. Dinsmore predicted that Walker would be absent from work more than three times a month due to her impairments or treatment. *Id*.

On July 13, 2010, Dr. Dinsmore noted that he had seen Walker every two to three months since June 15, 2007. (Tr. 645.) He diagnosed lumbar disc disease, irritable bowel syndrome ("IBS"), restless leg syndrome ("RLS"), and anxiety. *Id*. He noted that her prognosis was fair. *Id*. He indicated that Walker experienced the following symptoms: chronic severe diarrhea, nausea and vomiting, abdominal pain, and persistent or recurrent intestinal obstruction evidenced by abdominal pain, distension, nausea and vomiting and accompanied by stenotic areas of small bowel with proximal intestinal dilation. (Tr. 645.) Dr. Dinsmore opined that Walker's impairments lasted or could be expected to last at least twelve months, and that she was not a malingerer. *Id*. He opined that Walker could sit for about two hours in an eight-hour work day in fifteen minute increments and stand/walk less than two hours in an eight-hour work day in fifteen minute increments. (Tr. 646.) He averred that Walker required a job that would allow her to shift positions at will. *Id*. He further opined that Walker required a job with ready access to a restroom, as she would need to take unscheduled restroom breaks two to three times daily for five to ten minutes at a time. (Tr. 647.) He found that she could occasionally lift/carry up to ten pounds, but never lift/carry twenty pounds or more. *Id*. Finally, Dr. Dinsmore felt that Walker's pain was incapacitating and would prevent her from tolerating even "low stress" jobs.

(Tr. 646.)

Specifically, Walker argues that the ALJ did not give good reasons for rejecting limitations that Dr. Dinsmore found on March 19, 2008, June 30, 2009, and July 3, 2010.[3] (ECF No. 15 at 12-16.) After mentioning the increased limitations between Dr. Dinsmore's June 2009 and July 2010 assessments, the ALJ addressed Dr. Dinsmore's opinions as follows: "Dr. Dinsmore's significantly increased restriction findings suggests the latter form was completed as an accommodation for the claimant. These findings contrast sharply with the claimant's regular appointment records." (Tr. 17.) The ALJ also noted that Walker's back and knee pain has only been treated with prescription pain medications. *Id*.

The Commissioner asserts that the ALJ essentially accepted Dr. Dinsmore's June 2009 opinion. (ECF No. 19 at 13-14.) For the most part, this Court agrees. The RFC finding limiting Walker to sedentary work with a sit/stand option illustrates that the ALJ believed Walker could sit for six hours and stand/walk at least two hours in an eight-hour workday with a sit/stand option. Sedentary work requires no more than two hours of standing or walking in a workday. SSR 83-10. By necessary implication, a claimant must be able to sit for the remaining six hours. Thus, the RFC and the June 2009 opinion, as it relates to physical limitations, are largely consistent. Nonetheless, there is no indication as to why the ALJ rejected Dr. Dinsmore's June 2009 opinion that Walker would be absent from work more than three times a month due to her impairments or treatment. (Tr. 544.) As to the July 2010 assessment, it is clear that the ALJ roundly rejected the standing/walking and sitting limitations contained therein. The ALJ

---

[3] Walker's argument focuses on the ALJ's rejection of her physical limitations, and, therefore, the Court will address only the relevant portions of the opinions.

essentially offered two reasons for this rejection: (1) Dr. Dinsmore's July 2010 opinion was biased in favor of the claimant and is tantamount to an accommodation; and, (2) the findings "contrast sharply" from Walker's treatment notes.[4] (Tr. 17.)

The Court cannot credit such perfunctory reasoning. This fails to constitute good reasons for discrediting a treating physician's opinion. The ALJ's finding herein is similar to one that was criticized in *Nixon v. Astrue*, 2011 WL 4443106 (E.D. Okla. Sept. 22, 2011). Therein, the *Nixon* court was confronted with a case where the ALJ gave no weight to a treating physician's opinion and did not specifically identify any evidence in the record contradicting it. *Id*. at *4. The *Nixon* court found that "[the ALJ's] statements that Dr. Patton's report was prepared as an act of courtesy smack of the old 'treating physician's report appears to have been prepared as an accommodation to a patient' statement that has been roundly rejected as a basis for reducing the controlling weight normally afforded a treating physician's opinion." *Id*. (*citing Miller v. Chater*, 99 F.3d. 972, 976 (10th Cir.1996); *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987)). Similarly, another decision of this Court found that while treating physicians can sometimes be biased in favor of their patients, the fact that a doctor and a claimant both worked for the same hospital was not a sufficient basis to conclude that a treating physician's opinion was biased and unreliable. *See Papaleo v. Astrue*, 2011 WL 4633744 (N.D. Ohio Sept. 30, 2011) (citations omitted).

Here, the ALJ's primary basis for concluding that Dr. Dinsmore was biased in favor of the claimant was the increased limitations between the third assessment and the second completed a

---

[4] No explanation is offered as to how Dr. Dinsmore's findings allegedly contrast with Walker's treatment notes.

year earlier. The ALJ's finding appears to be based on the assumption that Walker's condition could not or did not deteriorate that much in one year. It is well-established that an ALJ may not substitute personal opinions for those of medical professionals. *See, e.g., Meece v. Barnhart*, 192 Fed. App'x. 456, 465 (6th Cir. 2006) ("[T]he ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.") (*citing McCain v. Dir., Office of Workers' Comp. Programs*, 58 Fed. App'x 184, 193 (6th Cir. 2003) (citation omitted); *Pietrunti v. Director, Office of Workers' Comp. Programs, United States DOL*, 119 F.3d 1035, 1044 (2nd Cir. 1997); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including [ALJs] of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.")); *accord Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 823-24 (N.D. Ohio 2009) ("Although the ALJ is charged with making credibility determinations, an ALJ 'does not have the expertise to make medical judgments.'"); *Stallworth v. Astrue*, 2009 WL 2271336 at *9 (S.D. Ohio, Feb. 10, 2009) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record.") (*quoting Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)). There is simply no evidence to support the ALJ's finding that Walker's ability to sit and stand/walk did not deteriorate, and his own, unexplained interpretation of the treatment notes, unsupported by any other medical source, was an impermissible exercise of medical judgement

In addition, the ALJ's perfunctory statement that "the findings contrast sharply with the claimant's regular appointment records" is also insufficient. (Tr. 17.) The ALJ is not a medical expert. The Court finds the reasoning of another case from this district with analogous facts to

11

be persuasive:

> [I]t appears that [the ALJ] has attempted to circumvent the treating source rule by giving greater weight to his own interpretation of the treatment notes. The ALJ's failure to identify other opinion evidence contained in the treatment notes leaves the Court to determine whether the notes actually contain opinions that are inconsistent with the formal treating source opinions or whether the ALJ has simply formulated his own medical opinion as a layperson interpreting the treatment notes. *See Martin v. Commissioner of Social Sec.*, No. 1:08–CV–00301, 2009 WL 3110203 at *11 (S.D.Ohio Sept.24, 2009), unreported ("An ALJ, as a layperson, may not substitute his own opinions for those of the expert doctors.") *citing Brown v. Apfel*, 174 F.3d 59 (2nd Cir.1999); *Miller v. Chater*, 99 F.3d 972 (10th Cir.1996).
>
> ***
>
> The undersigned recommends that the Court find an additional flaw in the ALJ's logic. The ALJ considered treatment notes inherently more reliable because they are maintained in the course of treatment; however, his logic undermines his conclusion. Treatment notes are maintained for the purpose of improving a patient's condition, and they . . . may often speak in terms of maladies, not functional capacities. *Cf. Griffeth*, 2007 WL 444808 at *4 ("The RFC describes 'the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities.'") *quoting Howard*, 276 F.3d at 240. Therefore, it is improper for the ALJ to assign greater weight to treatment notes, which are in most instances not written with the intention of outlining functional limitations. When the ALJ considered the treatment notes to be inherently more reliable than treating source opinions, he simply chose to abandon the treating source rule, which requires him to look at the treating sources opinions and afford them controlling weight if they are "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2); 416.927(d)(2). Here, the ALJ did not follow the regulations and implemented a rule of logic that would always displace the treating source's opinion and permit the ALJ to substitute his own lay judgment on a review of the treatment notes.

*Harmon v. Astrue,* 2011 WL 834138 (N.D. Ohio Feb. 8, 2011) *report and recommendation adopted*, 2011 WL 825710 (N.D. Ohio Mar. 4, 2011).

Accordingly, the undersigned finds that the ALJ failed to give sufficient justification for

12

rejecting Dr. Dinsmore's opinions.

*RFC Finding*

Walker also argues that the ALJ erred at Steps Four and Five by formulating an RFC that did not accommodate the limitations the ALJ found at Step Three. (ECF No. 15 at 17-19.)

An RFC determination is an indication of an individual's work-related abilities despite their limitations. *See* 20 C.F.R. § 416.945(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R. § 416.945(e). As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on *all* of the relevant evidence. *See* 20 C.F.R. § 416.945(a) (emphasis added). "Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence." *Carter v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 40828 at **21-22 (W.D. Mich. Mar. 26, 2012) (*citing Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472 (6th Cir. 1982)); *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 807 (6th Cir. 2008)).

Specifically, Walker asserts that the RFC, which limited him to "simple, routine, repetitive tasks with no changes in a routine work setting or more than occasional interaction with the public, coworkers, and supervisors," was insufficient to convey the "moderate levels of deficiencies of concentration, persistence, or pace." (Tr. 13-14; ECF No. 15 at 17-19.) Walker relies on the Sixth Circuit's decision in *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010), to support his argument. *Id.* Conversely, the Commissioner argues that the facts are distinguishable from the case at bar because Ealy was ascribed specific speed and pace-based limitations that are not present here. (ECF No. 19 at 19-20.) The Court finds that a remand is

13

necessary due to the ALJ's failure to give good reasons for rejecting the opinion of Dr. Dinsmore. Consequently, Walker's RFC may well change. Therefore, the Court declines to address this argument. Nonetheless, upon remand, if the ALJ finds that speed and pace-based functional limitations are present, the RFC should accurately account for them.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: December 5, 2012